ASSOCIATION FOR RETARDED CITI-
ZENS OF NORTH DAKOTA, et
al., Plaintiffs,

v.

Allen I. OLSON, Governor of the State
of North Dakota, et al., Defendants.

Civ. No. A1–80–141.

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 13, 1981.

Michael J. Williams, Bismarck, N.D.,
Mary Deutsch Schneider, Legal Assistance
of N.D., Fargo, N.D., for plaintiffs.

Robert O. Wefald, Atty. Gen., Rick D.
Johnson, Daniel L. Hovland, Asst. Atty.
Gen., Albert A. Wolf, Sp. Asst. Atty. Gen.,
Bismarck, N.D., for defendants.

## MEMORANDUM

VAN SICKLE, District Judge.

This memorandum is prepared in con-
junction with the interim Court order is-
sued by this Court on November 4, 1981. In
that order the Court decreed:

1. (a) That plaintiffs who have been in-
voluntarily hospitalized have a right
under the due process clause of the
Fourteenth Amendment to the United
States Constitution to receive minimal-
ly adequate care and treatment;

    (b) That plaintiffs who have been vol-
untarily hospitalized have a right under
the due process clause of the Four-
teenth Amendment to the United
States Constitution to receive minimal-
ly adequate care and treatment;

2. That plaintiffs who are involuntarily
or voluntarily hospitalized have a com-
parable right to receive minimally ade-
quate care and treatment under Chap-
ter 25–01.2 of the North Dakota Centu-
ry Code;

3. That the plaintiffs have a right under
the due process clause of the Four-
teenth Amendment to the United
States Constitution and Section 25–01.-
2–02 of the North Dakota Century
Code to have the defendants provide to
the plaintiffs the least restrictive prac-
ticable alternatives to hospitalization
upon involuntary or voluntary civil
commitment; and,

4. That certain practices and conditions at the Grafton State School and San Haven may constitute violations of the plaintiffs' rights under the due process clause of the Fourteenth Amendment to the United States Constitution and the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution.

This lawsuit was initiated by the Association of Retarded Citizens of North Dakota, a non-profit corporation which was incorporated in North Dakota in 1957. The corporation consists of approximately 1200 parents and guardians of mentally retarded citizens together with mental retardation professionals, concerned citizens and the mentally retarded citizens themselves. The organization initiated this action on September 26, 1980. Named as plaintiffs were Lindley Black, a ten year old mentally retarded person residing at the Grafton State School; Bradley Cossette, a twenty-six year old person in need of supervision; Richard Schneiderhan, a thirty-four year old mentally retarded person in need of supervision and treatment; Naomi Jordison, a four year old child physically and mentally disabled and in need of supervision and treatment; Kelli Moriarty, a twenty-one year old mentally retarded person residing at the Grafton State School; and, Philip Dechant, a mentally retarded person residing at the Grafton State School. On January 13, 1981, the plaintiffs were granted authority by this Court to proceed with the lawsuit as a class action lawsuit. The plaintiff class now consists of the Association and all persons who, as of September 26, 1980 and at any time thereafter, are residents of the Grafton State School and San Haven. The defendants are public officials responsible for the care and the conditions of the plaintiffs and the class members they represent.

The plaintiffs contend that the defendants are violating the due process clause of the Fourteenth Amendment to the United States Constitution by failing to provide an adequate program of habilitation. Denominated as the "right to treatment" or habilitation, the rights to which the plaintiffs refer consist of individualized treatment, education, and training for the residents of the institutions. The plaintiffs have alleged that they possess similar rights under Chapter 25–01.2 of the North Dakota Century Code. In addition, the plaintiffs also argue that the due process clause of the Fourteenth Amendment to the United States Constitution requires that the defendants develop less restrictive, community based alternatives for the care and treatment of voluntarily and involuntarily committed mentally retarded persons. The plaintiffs allege that they possess similar rights under Chapter 25–01.2 of the North Dakota Century Code. Finally, the plaintiffs contend that certain conditions existing at the institutions violate the cruel and unusual punishment clause of the Eighth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution.

This Court's jurisdiction over the lawsuit is invoked pursuant to Title 28 U.S.C. §§ 1331, 1343(3), (4) and 1337. The declaratory and injunctive relief requested in the complaint is authorized under Title 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure. This Court has pendent jurisdiction over the claims for relief which are based upon the law of North Dakota. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### *The Constitutional Right to Treatment*

█ The Supreme Court of the United States recognized in *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972) that confinement for compulsory psychiatric treatment involves a "massive curtailment of liberty." See also *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wyatt v. Aderholt,* 503 F.2d 1305 (5th Cir.1974). The Eighth Circuit Court of Appeals has accepted and refined this concept in *Welsch v. Likins,* 550 F.2d 1122 (8th Cir.1977) and *Goodman v. Parwatikar,* 570 F.2d 801 (8th Cir.1978). As defined by the Eighth Circuit in these two cases, the due process clause requires that commitment to an institution because of

mental retardation or other developmental disabilities must be accompanied by mini-mally adequate treatment designed to give each committed person a realistic opportunity to be cured or to improve his or her mental or physical condition.

The concept of a constitutional right to treatment is not a novel one. *Rouse v. Cameron,* 373 F.2d 451 (D.C.Cir.1966) is regarded as the first case to recognize the right. *Wyatt v. Stickney,* 325 F.Supp. 781 (M.D.Ala.1971), aff'd sub. nom., *Wyatt v. Aderholt,* 503 F.2d 1305 (5th Cir.1974) is regarded as the first major extension of the right by a court to places of State imposed confinement of noncriminal offenders.

■ A constant theme appearing in virtually every case recognizing a right to treatment is that treatment is the only constitutionally permissible purpose for civil confinement. Without treatment, being hospitalized at the state institutions because of mental retardation or other developmental disabilities would be equivalent to placement in an institution where one could be held indefinitely for no convicted offense. Without habilitation, institutionalized retarded persons will suffer physical and psychological harm that the defendants have a duty to prevent as part of their obligation to provide minimally decent care to the residents at the institutions.

North Dakota recognizes that all developmentally disabled persons have a right to appropriate treatment, services and habilitation for those disabilities in the least appropriate setting. § 25–01.2–02, N.D.C.C. This right and other rights possessed by developmentally disabled persons by virtue of Chapter 25–01.2, N.D.C.C. establish that the plaintiffs are entitled to the relief contained in the Court's interim order.

### The Constitutional Right to Freedom and Protection from Harm

■ The plaintiffs have asserted that conditions existing at the institutions violate their rights under the due process clause of the Fourteenth Amendment and the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. Basically, they contend that they have a right, whether based upon due process or freedom from cruel and unusual punishment, or both, to a humane and safe living environment while they reside at the state institutions. Both *Welsch v. Likins,* 550 F.2d 1122 (8th Cir.1977) and *Goodman v. Parwatikar,* 570 F.2d 801 (8th Cir.1978) have recognized this right. The right encompasses protection from assaults or other harms from fellow residents, reasonable access to exercise and outdoor activities, and care for basic hygenic needs of the residents. Specific conditions and practices which are discussed in the interim order include corporal punishment, neglect, seclusion and abuse of the residents at the institutions. In addition, the use of physical restraints and a review of existing fire prevention standards are discussed in the interim order. Each of these conditions or practices at the institution is embodied in the concept of a safe and humane living environment.

If the cruel and unusual punishment clause of the Eighth Amendment mandates, in prisons, care consistent with the provision of the minimal measure of life's necessities, the due process clause of the Fourteenth Amendment, which governs conditions in mental hospitals, can surely require no less. See *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). It is established that state statutes can create liberty interests entitled to protection under the due process clause. *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In this case, Chapter 25–01.2 of the North Dakota Century Code provides for the manner in which punishment and other methods of behavior control are to be used at the institutions. The rights guaranteed by state law and the Constitution of the United States fully support the steps taken by the Court to correct conditions existing at the institutions.